# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>AQUINUS S. ROGERS,<br><br>　　　　　　　　Defendant. | Case No. 21-CR-45-JPS<br><br>**ORDER** |

In May 2024, the Court entered an order based on Defendant Aquinus S. Rogers's ("Defendant") motion to reduce his sentence under Amendment 821 to the United States Sentencing Guidelines ("Guidelines"), ECF No. 38, in which it (1) concluded that Defendant is eligible for relief under Amendment 821 and (2) requested "additional briefing on the matter of whether a sentence reduction under Amendment 821 is appropriate." ECF No. 42 at 2. Thereafter, Defendant filed a supplemental moving brief, ECF No. 44, the Government filed a response, ECF No. 46, and Defendant filed a reply brief, ECF No. 47. The Government later moved for leave to file a sur-reply to "correct[] and clarif[y] a statement" in its response brief. ECF No. 48 at 1. The Court will grant the Government's motion and has considered the sur-reply in reaching its decision. For the following reasons, Defendant's underlying motion to reduce his sentence under Amendment 821 will be denied.

**1.　　PROCEDURAL HISTORY**

In 2014, Defendant was charged with armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *United States*

*v. Rogers*, Case No. 14-CR-234-JPS ("Case No. 14-CR-234-JPS"), ECF Nos. 20, 59 (E.D. Wis.); ECF No. 34 at 12. The offense conduct in that case involved Defendant's and an accomplice's attempted robbery of the Great Midwest Bank in West Allis, Wisconsin. Case No. 14-CR-234-JPS, ECF No. 28 at 14. Defendant knew prior to entering the bank that his accomplice would carry and brandish a semi-automatic pistol. *Id.* The two entered the bank and Defendant's accomplice pointed the pistol directly at the tellers and yelled "Get up, [g]ive me your money." *Id.* The two then tapped the pistol on the glass to get the tellers' attention. *Id.* The tellers refused to give Defendant and his accomplice any money and they fled. *Id.* They crashed their getaway vehicle and fled on foot before being arrested. *Id.*

Defendant pled guilty to both counts, and the Court sentenced him to a total term of imprisonment of 104 months, to be followed by five years of supervised release. Case No. 14-CR-234-JPS, ECF Nos. 28, 59. He was re-sentenced in June 2016 to a total term of imprisonment of 80 months, again to be followed by five years of supervised release. ECF No. 34 at 12. Defendant completed his term of incarceration in Case No. 14-CR-234-JPS on September 4, 2020, on which date he was released onto supervised release. *Id.*

Approximately three months later, between December 12, 2020 and December 18, 2020, Defendant committed one robbery and two armed robberies at three different Milwaukee-area branches of the Community Financial Services Center ("CFSC"). *Id.* at 5–6. At the first, on December 12, 2020, Defendant entered a CFSC and slid a note demanding money under the glass barrier protecting the tellers from the customers. *Id.* at 6. The teller did not take the note, and Defendant pulled a semi-automatic pistol from

his sweatshirt pocket and set it down on the counter in front of the teller. *Id.* The teller ran to the back of the store to call 911, and Defendant fled. *Id.*

A few days later, on December 18, 2020, Defendant entered another CFSC and again slid a note to the teller. *Id.* The teller read the note, which stated "All the Cash No Dye Packs Or ill Blow this Bitch up." *Id.* The teller pushed the alarm button under her desk and went to the back of the store, and Defendant left without any money. *Id.* His fingerprints were later recovered from the note. *Id.*

The same day, Defendant entered another CFSC, approached the teller's window where a customer was standing, and tapped his pistol on the teller's window. *Id.* He then demanded, "[g]ive me all that shit" and ordered the customer to face the wall. *Id.* The teller pushed the alarm button and then gave Defendant all the money in the drawer. *Id.* Defendant took the money, later determined to total $10,247.00, and fled. *Id.*

In February 2021, the grand jury returned an Indictment charging Defendant with two counts of attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), one count of completed Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), two counts of brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i) and one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). ECF No. 1.

Because Defendant had previously been convicted of an offense under § 924(c) in Case No. 14-CR-234-JPS, a subsequent conviction under § 924(c) would have carried a mandatory minimum sentence of 25 years of imprisonment. ECF No. 46 at 5 (citing 18 U.S.C. § 924(c)(1)(C)(i)).[1] The

---

[1] Count Two charged brandishing a firearm in furtherance of attempted Hobbs Act robbery, while Count Five charged brandishing a firearm in

parties negotiated a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), pursuant to which Defendant would agree to plead guilty to the attempted and completed Hobbs Act robbery counts as well as the felon-in-possession count, while the Government would agree to dismiss the § 924(c) counts and eliminate the 25-year mandatory minimum. *Id.* at 6 (citing ECF No. 24 at 6, 9). In the plea agreement, the parties agreed that "based on the relevant factors in 18 U.S.C. § 3553(a), . . . the appropriate disposition of the case is a term of imprisonment of 168 months, to run concurrently with any sentence of imprisonment imposed upon revocation in [Case No. 14-CR-234-JPS]." ECF No. 24 at 9.

All parties executed the plea agreement. *Id.* at 15. Upon receipt of the executed plea agreement, the Court ordered that a pre-plea sentencing report be prepared. ECF No. 25. That report contained the applicable Guidelines range, ECF No. 26 at 21, which the Court reviewed and considered before accepting the plea agreement, ECF No. 31. After accepting the plea agreement, *id.*, the Court was bound to impose the agreed-upon sentence under Rule 11(c)(1)(C).

At Defendant's sentencing hearing, the Court recited the applicable Guidelines range, to which neither party objected. ECF No. 35 at 1. An offense level of 28 and a criminal history category of III resulted in a Guidelines imprisonment range of 97 to 121 months. *Id.* The Court acknowledged that given the posture of the case, the Guidelines were

---

furtherance of completed Hobbs Act robbery. ECF No. 1 at 3, 6. After the Indictment was returned, the Supreme Court decided *United States v. Taylor*, 596 U.S. 845 (2022), holding that attempted Hobbs Act robbery does not qualify as a predicate "crime of violence" under 18 U.S.C. § 924(c). Thus, the offense charged in Count Two was no longer viable, but the penalty for Count Five remained the same: "a statutory mandatory minimum of 25 years in prison and a maximum of life to be imposed consecutively to any other sentence." ECF No. 46 at 5 n.3.

largely "academic." *Id.* at 2. As noted, the Court had already considered the Guidelines range prior to accepting the plea agreement. At that time, the Court recognized that the plea agreement was based primarily on the § 3553(a) factors and the Government's concession of the 25-year mandatory minimum rather than the Guidelines. For both of these reasons, by the time of the sentencing hearing, the Guidelines were indeed largely academic given that the Court was then bound to impose the parties' agreed upon sentence. The Court went on to impose the agreed-upon and accepted total sentence of 168 months, to be followed by three years of supervised release. ECF No. 36.

**2.     LEGAL STANDARD**

In April 2023, the United States Sentencing Commission ("the Commission") proposed Amendment 821 to Congress. *Materials Relating to the 2023 Criminal History Amendment*, U.S. SENT'G COMM'N, https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment [https://perma.cc/T954-GQFK] (last visited Aug. 8, 2024). Part A of Amendment 821 "decreases 'Status Points' by one point for individuals with seven or more criminal history points and eliminates them for individuals with six or less criminal history points" (the "Status Point Amendment"). *Id.* (under "Who is Eligible for Retroactive Application?" heading). "Individuals who received Status Points in their criminal history calculation are eligible for this retroactive reduction." *Id.* In August 2023, the Commission voted to give retroactive effect to this portion of Amendment 821. *Retroactivity Amendment ("Reader-Friendly" version)*, U.S. SENT'G COMM'N (Aug. 31, 2023), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf [https://perma.cc/P2B4-8FUA]

(last visited Aug. 8, 2024). Amendment 821 took effect on November 1, 2023. *Id.*

The Court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the . . . Commission pursuant to 28 U.S.C. [§] 994(o)." 18 U.S.C. § 3582(c)(2).[2] "[U]pon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Supreme Court explains that "[t]he statute thus establishes a two-step inquiry. A court must first determine that a reduction is consistent with [United States Sentencing Guideline] § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010). Specifically:

> Following this two-step approach, a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense. At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that

---

[2]Section 994(o) provides that the Commission may "review and revise" the Guidelines. 28 U.S.C. § 994(o).

Page 6 of 13
Case 2:21-cr-00045-JPS    Filed 08/08/24    Page 6 of 13    Document 49

were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1).

[. . . .]

At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Id.* at 827.

3. **ANALYSIS**

"A defendant who enters into a Rule 11(c)(1)(C) agreement is eligible for retroactive relief under [18 U.S.C.] § 3582(c)—so long as the guidelines range was 'part of the framework the district court relied on in imposing the sentence or accepting the agreement.'" *United States v. Sullivan*, No. 5:21-CR-584-10, 2024 WL 943334, at *2 (N.D. Ohio Mar. 5, 2024) (quoting *Hughes v. United States*, 584 U.S. 675, 685 (2018)). "The . . . Guidelines prohibit district courts from accepting [Rule 11(c)(1)(C)] agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range. . . . So in the usual case the court's acceptance of a [Rule 11(c)(1)(C)] agreement and the sentence to be imposed pursuant to that agreement are 'based on' the defendant's Guidelines range." *Hughes*, 584 U.S. at 687 (citing U.S.S.G. § 6B1.2(c)). As earlier explained, the Court considered the Guidelines when it decided to accept the parties' Rule 11(c)(1)(C) plea agreement and impose the agreed-upon sentence.

After reaching that conclusion upon receipt of Defendant's underlying motion to reduce his sentence under Amendment 821, ECF No. 38, the Court further concluded that Defendant qualifies for relief at step

one. ECF No. 42. Specifically, at the time of sentencing, Defendant received two status points, which raised his criminal history score from three to five. ECF No. 34 at 13. Because the Status Point Amendment retroactively eliminates status points for individuals with less than six criminal history points, Defendant's revised criminal history score of three places him in criminal history category II. ECF No. 46 at 9. Together with his offense level of 28, his amended Guidelines range of imprisonment is 87 to 108 months. *Id.* at 9–10.[3]

The 168-month sentence that the parties agreed upon, and which the Court accepted and imposed, is higher than both the original and amended Guidelines ranges, which qualifies Defendant for relief. *See Dillon*, 560 U.S. at 827; U.S.S.G. § 1B1.10(b)(2)(A) ("[T]he court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range"); U.S.S.G. § 1B1.10 app. note 3 (noting that "[i]f the term of imprisonment [originally] imposed was outside the guideline range applicable to the defendant at the time of sentencing, the limitation in subsection (b)(2)(A) also applies").

The Court therefore turns to step two: whether the § 3553(a) factors indicate that a reduction authorized at step one is warranted. *Dillon*, 560 U.S. at 827. The § 3553(a) factors include the following: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant

---

[3]*See also Sentencing Table*, U.S. SENT'G COMM'N, *available at* https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2016/Sentencing_Table.pdf [https://perma.cc/X8TJ-GE88] (last visited Aug. 8, 2024).

with effective training, care, and/or treatment. Application Note (B)(ii) to § 1B1.10 further expressly directs the Court to "consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Thus, contrary to Defendant's assertion that he is "entitled to relief" and that the Government has conceded as much, ECF No. 47 at 1, the Court has "substantial discretion to determine . . . whether to grant a sentence reduction." *United States v. Young*, 555 F.3d 611, 612 (7th Cir. 2009)).

Defendant raises several reasons why his sentence should be reduced. He points out that he has spent nearly four years in prison without any conduct reports. ECF No. 44 at 1; ECF No. 47 at 4. He has maintained sobriety and has a support group to assist with his re-entry into society. ECF No. 44 at 1. He is also working towards his GED. *Id.* He argues that the COVID-19 pandemic and repeated prison shutdowns have caused his time in prison to be a "solitary" and overly disciplinary sentence.[4] *Id.* at 2–3. He asserts that he was only 23 years old at the time of the instant offenses, that he was suffering from drug addiction at this time, that he currently suffers from mental illness, and that he is not an immediate risk to the community. *Id.* at 5–6; ECF No. 47 at 4. He maintains that the instant offenses were committed during the COVID-19 pandemic and that he will not recidivate.

---

[4]To the extent that Defendant raises the COVID-19 pandemic as a basis for compassionate release under 18 U.S.C. 3582(c)(1)(A), the Government submits that Defendant has not exhausted it by filing a request relating thereto with his warden, as required by the statute. ECF No. 46 at 17–18. "[T]he exhaustion requirement is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). Because the Government "properly invoked [Defendant's] failure to comply with § 3582(c)(1)(A)'s exhaustion requirement," and Defendant has not refuted the Government's challenge to his failure to exhaust, any compassionate release motion must be denied on that basis. *Id.*

ECF No. 44 at 6. He originally requested to be resentenced to a term of 85 months, though he later changes that request to 108 months, arguing that he was not aware that his 168-month sentence exceeded the original Guidelines range. *Id.*; ECF No. 47 at 3, 6.[5]

For its part, the Government argues that Defendant ignores the "generous" effect of his Rule 11(c)(1)(C) plea agreement, which removed the possibility of a mandatory 25-year prison term. ECF No. 46 at 12. The Government asserts that this topic was covered extensively during plea negotiations, at Defendant's change of plea hearing, and at sentencing. *Id.* Defendant has also demonstrated himself to be a "quick recidivist." *Id.* at 13. His crimes were "serious, dangerous, and undoubtedly terrifying for those involved." *Id.* at 14. Further, his criminal history, even outside of Case No. 14-CR-234-JPS, shows additional examples of theft and armed robbery. *Id.*; ECF No. 34 at 14. The Government also points out, and clarifies in its sur-reply, that while Defendant has recently stayed out of trouble while in prison, he incurred three infractions in 2016, 2018, and 2019 while serving

---

[5]Defendant argues that he also qualifies under Part B to Amendment 821, which allows for a two-level decrease in a defendant's offense level if the defendant has no criminal history points and their offense of conviction did not involve any of the nine specified aggravating factors (the "Zero-Point Offender Amendment"). ECF No. 47 at 1; U.S.S.G. § 4C1.1(a). However, as explained above, even without his status points, Defendant received three criminal history points, and so he is ineligible for relief under the Zero-Point Offender Amendment.

Defendant also inquires whether his counts of conviction should be "grouped" under the Guidelines. ECF No. 47 at 5–6; ECF No. 44 at 4. The Court consulted with the U.S. Probation Office as to this inquiry, which explained that Counts One, Three, and Four—as separate instances of attempted and completed Hobbs Act Robbery—are specifically not grouped under U.S.S.G. § 3D1.2(d). Count Six is considered relevant conduct and therefore was grouped. ECF No. 34 at 9. No amendment operates to change this conclusion.

his sentence in Case No. 14-CR-234-JPS. ECF No. 46 at 15–16; ECF No. 46-1; ECF No. 48-1.

When deciding whether a sentence reduction is appropriate, or the extent of any reduction, "[t]he district court can consider the benefits the defendant gained by entering a [Rule 11(c)(1)(C)] agreement . . . 'for the statute permits but does not require the court to reduce a sentence.'" *Hughes*, 584 U.S. at 689 (quoting *Freeman v. United States*, 564 U.S. 522, 532 (2011)). Here, as the Court concluded when it accepted the plea agreement, there is no doubt that Defendant received enormous benefit from his plea agreement. Reducing his sentence would undermine that benefit. *See United States v. Rosa-Robles*, No. 2:19-CR-380, 2024 WL 449389, at *3 (W.D. Pa. Feb. 6, 2024) ("[Defendant's] motion also fails because it ignores the effect of his plea agreement.").

The record further indicates that Defendant had many opportunities to be apprised of his plea agreement's terms, and that he understood them. Magistrate Judge Stephen C. Dries questioned Defendant "as to his background and understanding of the plea agreement" at Defendant's change of plea hearing and concluded that Defendant was competent to enter a plea, "aware of the nature of the charges and the consequences of his plea," and that Defendant's plea was knowing and voluntary. ECF No. 29 at 1. The Court recited the applicable Guidelines range to Defendant, to which there were no objections, at his sentencing hearing before imposing the agreed-upon 168-month sentence. ECF No. 35. The Court thus does not find Defendant's current comments to the contrary compelling.

As the plea agreement reflects, "the parties took into account the relevant factors under 18 U.S.C. § 3553(a) when negotiating a plea agreement that significantly mitigated the more onerous consequences of

the [25-year mandatory minimum]" that would have otherwise applied. *United States v. Suell*, No. CRIM 3:99-CR-324-D, 2008 WL 2845295, at *3 (N.D. Tex. July 17, 2008). "The court then approved that plea agreement. Consequently, the sentence the court ultimately imposed was then, and remains, sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2) . . . ." *Id.*

Defendant's instant arguments do not change the calculus. The 168-month sentence appropriately reflects the seriousness of Defendant's offenses and protects the public. It took Defendant approximately three months of being out of the custodial setting in Case No. 14-CR-234-JPS to recidivate and face new charges in this case. While the instant offenses took place during the COVID-19 pandemic, at which time Defendant's drug addiction and mental health issues may have been exacerbated, his criminal history suggests that committing robberies is a pattern for him that extends back much further than the COVID-19 pandemic. The fact that Defendant recently has had no conduct reports and has maintained sobriety indicates that the custodial setting is providing him with effective training, care, and treatment, and is the appropriate place for him at this time. Most importantly, Defendant's crimes were dangerous and serious, and releasing him now would undermine, and could indeed pose additional threats to, the public's protection. Accordingly, although Defendant is eligible for a reduction under the Status Point Amendment, the § 3553(a) factors indicate that such a reduction is not warranted. Defendant's motion will be denied.

4. **CONCLUSION**

For the reasons set forth above, the Court denies Defendant's motion to reduce his sentence under Amendment 821. ECF No. 38.

Page 12 of 13
Case 2:21-cr-00045-JPS   Filed 08/08/24   Page 12 of 13   Document 49

Accordingly,

**IT IS ORDERED** that Defendant Aquinus S. Rogers's motion to reduce his sentence under Amendment 821, ECF No. 38, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the Government's motion for leave to file a sur-reply, ECF No. 48, be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 8th day of August, 2024.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge